Entered on Docket
June 07, 2010
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed: June 03, 2010

_____
EDWARD D. JELLEN
U.S. Bankruptcy Judge
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                         No. 09-43469-EDJ
                                              Chapter 7
ANTHONY A. MALFATTI,

                 Debtor.        /

BANK OF AMERICA, N.A. (USA),                  Adv. No. 09-04318 AJ
a National Bank and MBNA
AMERICA BANK, N.A., a
National Bank

                 Plaintiffs,
vs.

ANTHONY A. MALFATTI,

                 Defendant.     /


                            AMENDED DECISION

    Plaintiffs Bank of America, N.A. (USA) ("BofA") and MBNA
America Bank, N.A. ("MBNA"), (jointly, "Plaintiffs") have moved for
summary judgment in this adversary proceeding. By their motion,
Plaintiffs seek a determination that, through the application of
collateral estoppel, the liability of defendant Anthony A. Malfatti,

Amended Decision

the above debtor ("Malfatti"), under a pre-bankruptcy judgment issued by the Circuit Court of Jackson County, Alabama, is nondischargeable under Bankruptcy Code § 523(a)(6) (willful and malicious injury). The court will grant Plaintiffs' motion.

A. Background

The relevant facts are undisputed, and are set forth in a Declaration of John W. Scott, Plaintiffs' counsel of record in Civil Action No. CV-04-308 Circuit Court of Jackson County, Alabama. (Action No. CV-04-308, together with various other actions with which it was consolidated is hereafter referred to as the "Alabama Action".)

Plaintiffs filed their First Amended Third Party Complaints in the Alabama Action on September 2, 2005, seeking damages and injunctive relief against Malfatti, TA Financial Group ("TAF"), Arbitration Forum of America ("AFOA"), and others. In short, these complaints alleged that: (a) Malfatti was an officer and founding principal of TAF, which he ostensibly established as a non-profit corporation to provide educational services to credit card holders; (b) that Malfatti and TAF engaged in a fraudulent debt elimination scheme by which: (i) they manufactured a dispute with Plaintiffs and other credit card issuers, (ii) they produced documents by which the credit card agreements between the cardholders and Plaintiffs were unilaterally modified by the cardholders to permit them to arbitrate the "dispute" with AFOA, (iii) AFOA issued sham arbitration awards in favor of the cardholders, and (iv) such awards were submitted to Circuit Court of Jackson County, Alabama to be confirmed as

Amended Decision 2

judgments.

After they filed their original third party complaints, Plaintiffs filed motions to vacate the sham arbitration awards, which the Circuit Court granted on September 3, 2005.

On January 19, 2006, Malfatti and TAF, through their counsel, filed: (a) motions to dismiss Plaintiffs' complaints, which the Circuit Court denied, and (b) answers to the complaints, which included a one-line general denial of the allegations and an objection by Malfatti to the Circuit Court's jurisdiction.

Through his counsel, Malfatti then proceeded to file a complex series of motions and jurisdictional and other objections, none of which were successful. Malfatti and TAF also refused to provide documents in discovery or to attend duly noticed and re-noticed depositions. On November 21, 2006, Plaintiffs moved for entry of a default judgment against Malfatti and TAF, alleging numerous discovery and other abuses, and violations of Circuit Court orders over the course of the litigation. Through counsel, Malfatti filed opposition.

On March 6, 2007, the Circuit Court entered its order granting Plaintiffs' motion. On March 27, 2007, Malfatti and TAF filed a motion to set aside this order. The Circuit Court denied the motion. Malfatti and TAF also filed a Petition for Mandamus with the Supreme Court of Alabama, challenging the order. The Alabama Supreme Court denied the petition.

Malfatti's discovery abuses continued.
/////

On February 4, 2008, the Circuit Court held an evidentiary hearing regarding damages.  Through counsel, Malfatti filed a brief in opposition, and appeared at the hearing.  On February 19, 2008, the Circuit Court entered its Judgment (the "Judgment") awarding BofA compensatory damages against Malfatti and TAF in the sum of $103,464.97, plus punitive damages against Malfatti in the sum of $100,000, for a total of $203,464.97, plus punitive damages against TAF in the sum of $50,000.  The Judgment awarded MBNA compensatory damages against Malfatti and TAF in the sum of $109,805.38, plus punitive damages against Malfatti in the sum of $100,000, for a total of $209,805.38, plus punitive damages against TAF in the sum of $50,000.  The Judgment also provided that, under the doctrine of piercing the corporate veil, Malfatti was personally liable for the judgment against TAF.  The Judgment also granted Plaintiffs the injunctive relief they had requested.[1]

Following entry of the Judgment, Malfatti and TAF filed a motion to amend, alter, or vacate the Judgment, which the Circuit Court denied.

On April 27, 2009, Malfatti filed his voluntary petition herein under chapter 7 of the Bankruptcy Code.  Plaintiffs' complaint and the summary judgment motion now before the court followed.

///

---

[1] Portions of the Alabama Action remained at issue after entry of the Judgment.  On June 30, 2009, the Circuit Court made extensive additional findings regarding the sham debt elimination and sham arbitration scams, and issued its Final Order and Judgment.  This concluded the Alabama Litigation.

Amended Decision 4

B.  <u>Discussion</u>

   1.  <u>Summary Judgment</u>

"Summary judgment is properly granted when there is no genuine issue of material fact and moving party is entitled to judgment as a matter of law." <u>Clipper Express v. Rocky Mountain Motor Tariff Bureau Bankruptcy Inc.</u>, 690 F.2d 1240, 1250 (9th Cir. 1982), <u>cert. denied</u>, 459 U.S. 1227 (1983).  Fed.R.Civ.P. 56, applicable herein via Fed.R.Bankr.P. 7056.

   2.  <u>Bankruptcy Code § 523(a)(6)</u>

Bankruptcy Code § 523(a)(6) provides "A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt - . . . (6) for willful or malicious injury by the debtor to another entity or to the property of another entity."  There can be no dispute that the extensive findings by the Circuit Court in the Alabama Litigation establish that Malfatti's debt to Plaintiffs resulted from Malfatti's causing them a willful and malicious injury within the meaning of Bankruptcy Code § 523(a)(6).  <u>See</u>, <u>generally</u>, <u>Kawaauhau v. Geiger</u>, 523 U.S. 57, 118 S.Ct. 974 (1998).

This is established by the provisions of the Judgment assessing punitive damages against Malfatti, and reciting the facts that

> Bank of America and MNBA . . . (collectively, "Third Party Plaintiffs") have suffered and are suffering and will continue to suffer immediate and irreparable harm to their business as a proximate result of these third party defendants' wrongdoing. If these Third Party Defendants [which included Malfatti] are not enjoined from promoting, facilitating, and conducting sham debt elimination schemes and facilitating sham arbitration proceedings, Third Party Plaintiffs rights will be irreparably harmed.
> . . .

Amended Decision                    5

Third Party Plaintiffs have no adequate remedy at law
because issuance of appropriate injunctive relief is the
only means by which this fraudulent scheme can effectively
be stopped and prevented from recurring.

3. <u>Collateral Estoppel</u>

The major issue before the court is whether the findings by the Circuit Court are entitled to collateral estoppel effect in this adversary proceeding. The parties agree that collateral estoppel may apply to nondischargeability proceedings under Bankruptcy Code § 523(a). <u>Grogan v. Garner</u>, 498 U.S. 279, 284-85, 111 S.Ct. 654, 658 n. 11 (1991); <u>In re Nourbakhsh</u>, 67 F.3d 798, 801 (9th Cir. 1995). The parties also agree that under the federal full faith and credit statute, 28 U.S.C. § 1738,[2] this court must look to the collateral estoppel rules of the State of Alabama to make its determination. <u>Nourbakhsh</u>, 67 F.3d at 800; <u>In re Bugna</u>, 33 F.3d 1054, 1057 (1994).

The court turns, then, to Alabama law. In <u>Wheeler v. First Alabama Bank of Birmingham</u>, 364 So.2d 1190, 1199 (Ala. 1978), the Alabama Supreme Court set forth Alabama's requirements for collateral estoppel as follows:

> Collateral estoppel operates where the subsequent suit
> between the same parties is not on the same cause of
> action. Requirements for collateral estoppel to operate
> are (1) issue identical to one involved in previous suit;

---

[2] 28 U.S.C. § 1738 provides, in relevant part that State acts and judicial proceedings "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State . . . from which they are taken."

Amended Decision                                6

> (2) issue actually litigated in prior action; and
> (3) resolution of the issue was necessary to the prior judgment. . . . If these elements are present, the prior judgment is conclusive as to those issues actually determined in the prior suit.

See also Dairyland Ins. Co. v. Jackson, 566 So.2d 723, 726 (Ala. 1990).

Here, as to the "same parties" requirement, there is no dispute that Malfatti and Plaintiffs, the parties now before this court, were parties to the Alabama Litigation. With reference to the "identical issue" requirement, Malfatti does not dispute that the factual elements needed to prove a "willful and malicious" injury within the meaning of Bankruptcy Code § 523(a)(6) were at issue in the Alabama Litigation. Nor can he reasonably dispute, with reference to the final requirement, that resolution of those factual elements was necessary to the Judgment in the Alabama Litigation.

Malfatti's main argument, then, is that, because the Judgment is a default judgment, the matters determined by the Circuit Court were not "actually litigated," and thus, that this requirement for the application of collateral estoppel under Alabama law has not been met. Plaintiffs disagree.

Here, the court concludes that the Judgment is entitled to collateral estoppel effect under Alabama law. The court bases its conclusion on Malfatti's extensive participation in the Alabama Litigation with the assistance of legal counsel, his severe misconduct therein, and the case law hereinafter cited. This conclusion follows from the foregoing, whether or not Alabama would give collateral estoppel effect to findings in connection with a

Amended Decision 7

default judgment entered in a case in which the defaulting party did not extensively participate.

It is unclear whether, as an abstract proposition, Alabama courts permit application of collateral estoppel in a case, unlike the present case, where a court had entered a judgment by default on account of the defaulting party's failure to answer a complaint or defend an action. Malfatti has cited a number of reported decisions he contends mandate a negative answer, and Plaintiffs have cited a number of reported decisions they contend mandate an affirmative answer. The fact, however, is that neither party has cited any decision by a court of the State of Alabama that definitively opines on the matter, one way or the other.

The decisions cited by Malfatti generally turned on the fact that the elements of the claim in the second case differed from those alleged in the first,[3] or involved consent decrees rather than default judgments.[4] Malfatti cites Central of Ga. Railway Co. v. Dothan National Bank, 91 So. 351, 357 (Ala. 1912) and Irby v. Commercial National Bank, 85 So. 509 (Ala. 1920) for the proposition that it is "'unquestionably the law'" of Alabama that a default judgment cannot be given preclusive effect through application of collateral estoppel. However, Malfatti took the "unquestionably the

---

[3]Commissioners' Court of Tuscaloosa County v. State, 61 So. 431 (Ala. 1913); Irby v. Commercial National Bank of Eufaula, 85 So. 509 (Ala. 1920); Crowder v. Red Mountain Mining Co., 29 So. 847 (Ala. 1900); Barnett v. Pinkston, 191 So. 371 (Ala. 1939).

[4]Barnett v. Pinkston, 191 So. 371 (Ala. 1939).

Amended Decision  8

law" language from theses decisions out of context. The fact is that the "unquestionably the law" quote in both decisions had absolutely nothing to do with the collateral estoppel effect of default judgments.[5] Moreover, the decisions in <u>Central of Ga. Railway</u> and <u>Irby</u> turned on the fact that the claim or demand sued on in the second action was not included in the claim or demand adjudicated by the prior judgment. <u>Central of Ga. Railway</u>, 91 So. at 357; <u>Irby</u>, 85 So. at 510.

Malfatti cites <u>Ex Parte Overton</u>, 985 So.2d 423 (Ala. 2007) as a decision affirming that the issue has been well settled in Alabama for 68 years. <u>Overton</u>, however, concerned the right of an insurer who was not a party to the prior litigation to set aside a default judgment entered in that litigation. The court held that the insurer, as a non-party, lacked standing to do so, but noted that the insurer could bring an independent action alleging lack of coverage because coverage was not at issue in the first action. <u>Id.</u> at 433. Nothing in <u>Overton</u> opines on the issue of whether findings

---

[5]The quote, in relevant part, reads: "It is unquestionably the law that a former judgment is a bar or estoppel against a prosecution upon the same claim or demand between the same parties, and concludes them, not only as to what was offered to maintain or defeat the claim or demand, but as to any other admissible matter which might have been offered. But where the second action between the same parties is upon a different claim, the demand in the prior action operates as an estoppel only as to matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. . . ." <u>Irby</u>, 85 So. at 509-10; <u>Central of Ga. Railway</u>, 91 So. at 357 (quoting <u>Irby</u>).

Amended Decision                              9

made in an action that concludes by entry of a default judgment are or are not preclusive by operation of collateral estoppel.

Malfatti cites three decisions by bankruptcy judges sitting in the Northern District of Alabama, none of which advance the inquiry. In In re Booth, 174 B.R. 619 (Bankr. N.D. Ala. 1994) the issue involved a consent judgment, not a default judgment. Id. at 621. Even so, the bankruptcy court opined in a dictum that "[t]he law in Alabama, supported by the Eleventh Circuit and textwriters, is that neither a consent judgment nor a default judgment can satisfy the 'actually litigated' element" of collateral estoppel." Id. at 623. The citations that followed this dictum, however, concerned, respectively, consent judgments and not default judgments, AAA Equipment & Rental, Inc. v. Bailey, 384 So.2d 107 (Ala. 1980), Kaspar Wire Works, Inc. v. Leco Engineering & Machine, Inc., 575 F.2d 530 (5th Cir. 1978), and a default judgment where the issue was governed by Florida, not Alabama, law. Gibbs v. Air Canada, 810 F.2d 1529 (11th Cir. 1981).

Clearly, then, Booth is of no assistance.

The other bankruptcy court decisions cited by Malfatti are Porterfield v. Cornner (In re Cornner), 191 B.R. 214 (Bankr. N.D. Ala. 1995) and Dorian v. Cornner (In re Cornner), 191 B.R. 199 (Bankr. N.D. Ala. 1995). In both decisions, the bankruptcy judge stated in a footnote "it is doubtful that a default judgment has any collateral estoppel effect." Porterfield, 191 B.R. at 228 fn. 11; Dorian, 191 B.R. at 206 fn. 3. In both decisions, however, the authority cited for the court's expression of doubt was limited to a

Amended Decision                    10

case involving a dismissal without prejudice, <u>Smith v. Union Bank & Trust Co.</u>, 653 So.2d 933 (Ala. 1995), a case involving a stipulated judgment, <u>AAA Equipment & Rental, Inc. v. Bailey</u>, 384 So.2d 107 (Ala. 1980), and the <u>Booth</u> case.

Similarly, the Alabama decisions cited by Plaintiffs are inapposite here, in that they involved application of res judicata, rather than collateral estoppel,[6] or an appeal from entry of a default judgment.[7]

Given, then, the absence of definitive Alabama authority as to the issue at hand, it is appropriate for the court to look to several decisions, which although not binding here, involved facts very similar to those that are present here and the same four-part collateral estoppel test applied by the Alabama courts.[8]

---

[6]<u>Walker v. Blackwell</u>, 800 So.2d 582 (Ala. 2001); <u>McDonald v. U.S. Die Casting & Devel. Co.</u>, 628 So.2d 433 (Ala. 1993).

[7]<u>Jones v. McGaha</u>, 470 So.2d 1272 (Ala. 1985).

[8]During oral argument on Plaintiffs' summary judgment motion, the court inquired whether it could and should certify the facts and issues present here to the Supreme Court of Alabama and request its opinion on the matter. Rule 18 of the Alabama Rules of Appellate Procedure sets forth Alabama's procedure for doing so. This court has concluded, however, that such certification would not be appropriate because (a) both parties here do not agree that certification is appropriate, and (b) it is unclear whether the Alabama Supreme Court would recognize this court as a "court of the United States" within the meaning of Rule 18. See <u>In re Brickell Inv. Corp.</u>, 922 F.2d 696 (11th Cir. 1991) (bankruptcy court is not a "court of the United States" for purposes of 26 U.S.C. § 7430); <u>In re Davis</u>, 899 F.2d 1136 (11th Cir. 1990) (bankruptcy court is not a "court of the United (continued...)

The first such decision is In re Bush, 62 F.3d 1319 (11th Cir. 1995). In Bush, the issue was whether a bankruptcy court was required to give collateral estoppel effect to a default judgment for fraud entered by a U.S. District Court sitting in Florida. As here, the debtor had engaged in numerous discovery and other violations including the debtor's failure to produce trial exhibits, to appear for a properly noticed deposition, and his providing phony excuses for his failure to appear. The district court entered a default judgment against the debtor.

Subsequently, in the debtor's bankruptcy case, the bankruptcy court gave collateral estoppel effect to the district court judgment, finding that the debtor had had an "ample opportunity to contest the fraud allegations in the prior action." Bush, 62 F.3d at 1323. On appeal, the Eleventh Circuit affirmed. The court reasoned:

> Bush actively participated in the prior action over an extended period of time. Subsequently, he engaged in dilatory and deliberately obstructive conduct, and a default judgment, based on fraud, was entered as sanction against him. He now attempts, in this bankruptcy proceeding, to avoid Section 523 by denying the fraud. Such abuse of the judicial process must not be rewarded by a blind application of the general rule denying collateral estoppel effect to a default judgment.

---

[8](...continued)
States" for purposes of 28 U.S.C. § 2412); In re Sneller, 153 B.R. 343 (Bankr. M.D. Ala. 1993) (bankruptcy court is not a "court of the United States"); but see In re Brooks, 175 B.R. 409 (Bankr. S.D.Ala. 1994) (bankruptcy court is a "court of the United States").

Amended Decision 12

Id. at 1324.

As mentioned, Bush is not binding here. The litigation was in a state other than Alabama. And the trial court was a federal court, not a state court, meaning that 28 U.S.C. § 1738 (requiring federal courts to give full faith and credit to state acts and proceedings) was inapplicable. The reasoning, however, is compelling, and just as applicable to the facts here as they were to the facts in Bush.

Along the same lines is In re Daily, 47 F.3d 365 (9th Cir. 1995). In Daily, the debtor had evaded discovery in a U.S. District Court RICO action (in Kansas) for a period of almost two years, and had engaged in a "deliberate, dilatory course of conduct." Id. at 367. The district court struck the debtor's answer, and entered a fraud judgment against him. Id. The Tenth Circuit affirmed. Thereafter, the debtor filed a bankruptcy case in Hawaii. The bankruptcy court in Hawaii applied collateral estoppel to render the fraud judgment nondischargeable. The district court affirmed.

So did the Ninth Circuit. The Ninth Circuit reasoned:

> The judgment entered in the RICO action was not an ordinary default judgment. Daily did not simply decide the burden of litigation outweighed the advantages of opposing the FDIC's claim and fail to appear. He actively participated in the litigation, albeit obstructively, for two years before judgment was entered against him. A party who deliberately precludes resolution of factual issues through normal adjudicative procedures may be bound, in subsequent, related proceeding involving the same parties and issues by a prior judicial determination reached with completion of the usual process of adjudication. In such cases, the 'actual litigation' requirement may be satisfied by substantial participation in an adversary context in which the party is afforded a reasonable opportunity to defend himself on the merits but chooses not to do so.

Amended Decision                    13

Id. at 368.

The Ninth Circuit went on to note that application of collateral estoppel under such circumstances would be consistent with the purpose of the doctrine, "'protect[ing] [the prevailing party] from the expense and vexation attending multiple lawsuits, conserv[ing] judicial resources, and foster[ing] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" Id. at 368-69, quoting Montana v. U.S., 440 U.S. 147, 153-54, 99 S.Ct. 970, 973-74 (1979).

Here, as in Daily, the Judgment followed Malfatti's "substantial participation in an adversary context" and Malfatti was "afforded a reasonable opportunity to defend himself on the merits" but chose not to do so. Again, Daily is not binding. But it certainly is persuasive.

Equally persuasive is the Fifth Circuit's decision in In re Gober, 100 F.3d 1195 (5th Cir. 1996), another case in which the facts are remarkably similar to those present here. In Gober, the debtor, as here, had filed an answer to a state court complaint (in Texas) denying liability, and had actively litigated the matter for two years. The state court ended up striking the answer and entering a default judgment because, as here, the debtor had "repeatedly impeded the course of the proceedings by refusing to comply with discovery and by defying court orders." Id. at 1205-1206.

In the debtor's subsequent bankruptcy case, the bankruptcy court held that collateral estoppel barred the debtor from

Amended Decision 14

relitigating the issues. On the debtor's appeal to the Fifth Circuit, the issue was whether the Texas state court default judgment was entitled to preclusive effect in the subsequent bankruptcy court dischargeability proceeding.

In its decision, which held in the affirmative, the Fifth Circuit took the occasion to discuss the "actually litigated" requirement of collateral estoppel. In doing so, the court noted that the general term "default judgment" is "used loosely to describe very different types of judgments under Texas law." Id. at 1204. The court then distinguished between a default judgments: (a) where a defendant fails to answer, and (b) where a defendant answers, but fails to appear at trial, opining that the latter type meets the actually litigated requirement.

The Fifth Circuit then held that under the facts before it, the situation resembled the latter type of default, observing that, as was the case here, the state court had held a damages hearing at which the creditor had the burden of establishing that the degree and type of the debtor's misconduct warranted punitive damages. Id. The Sixth Circuit's decision in In re Bursack, 65 F.3d 51 (6th Cir. 1995) is in accord. (Under Tennessee law, "actually litigated" requirement was met when the debtor failed to appear for trial.)

This court cannot conceive of any reason why the compelling logic of the Eleventh, Ninth, Fifth, and Sixth Circuits in, respectively, Bush, Daily, Gober, and Bursack would not be followed by the courts of Alabama.

/////

Amended Decision          15

This is so because resolution of the collateral estoppel issue should not turn on the mere fact that the Judgment was a default judgment, but rather, on the facts that Malfatti's participation in the Alambama litigation was extensive and done with the assistance of counsel, and that Malfatti had every opportunity to defend Plaintiffs' action and elected not to do so, but instead, to engage in a prolonged course of obstructive conduct.

This conclusion is bolstered by the Supreme Court's decision in Montana v. U. S., 440 U.S. 147, 99 S.Ct. 970 (1979), cited with approval by the Alabama Supreme Court in Century 21 Preferred Properties, Inc. v. Alabama Real Estate Commission, 401 So.2d 764, 770 (1981). In Montana, the Supreme Court explained:

> Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. Application of both doctrines is central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions. To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.

Montana, 440 U.S. at 153-54, 99 S.Ct. at 973-74 (internal citations omitted). Here, Malfatti has had "a full and fair opportunity to litigate" and his adversaries, Plaintiffs herein, should be protected "from the expense and vexation attending multiple lawsuits." Moreover, Malfatti should not be permitted to profit from his repeated violations of the Circuit Court's orders by getting a "second bite out of the apple."

Amended Decision 16

For the foregoing reasons, the court holds that the Judgment should be given collateral estoppel effect in this nondischargeability proceeding.

4. Damages

Malfatti argues that even if the Judgment is given collateral estoppel effect, the punitive damages the Circuit Court awarded are nevertheless dischargeable, citing In re Levy, 951 F.2d 196 (9th Cir. 1991). Levy, however, has been overruled by Cohen v. De La Cruz, 523 U.S. 213, 118 S.Ct. 1212 (1998). After De La Cruz, it has been clear that the punitive damages portion of a nondischargeable liability is nondischargeable. De La Cruz, 523 U.S. at 221, 118 S.Ct. at 1217-18. See also In re Britton, 950 F.2d 602 (9th Cir. 1991).

Similarly, Malfatti argues that the attorneys' fees the Circuit Court awarded Plaintiffs are dischargeable, citing In re Fulwiler, 624 F.2d 908 (9th Cir. 1980). Again, however, the Supreme Court's decision in De La Cruz makes clear that the attorneys' fees portion of a nondischargeable liability are nondischargeable. De La Cruz, 523 U.S. at 223, 118 S.Ct. at 1219.

C. Conclusion

The court will issue its judgment providing that Malfatti's liability to Plaintiffs under the Circuit Court's Judgment is nondischargeable under Bankruptcy Code § 523(a)(6).

\*\*\* END OF ORDER\*\*\*

Amended Decision                17

COURT SERVICE LIST

DOUGLAS G. BOVEN
REED SMITH, LLP
Two Embarcadero Center, Ste. 2000
San Francisco, CA 94111

WILLIAM F. ABBOTT
LAW OFFICES OF WILLIAM F. ABBOTT
211 Gough St. #201
San Francisco, CA 94102